# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

ROCHESTER EUGENE PRESLEY # 113082                            **PLAINTIFF**

VS.                                **CIVIL ACTION: 1:16cv274-RHW**

MARSHALL TURNER, *et al.*                           **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Before the Court is [24] Defendants' February 7, 2017 motion for summary judgment in this *pro se* prisoner civil rights lawsuit filed July 26, 2016.  Plaintiff filed his response [26] and memorandum [27] opposing the motion on February 24, 2017, and [28] a second memorandum on April 7, 2017.  Defendants filed no reply and the matter is ripe for ruling.  The parties consented to the exercise of jurisdiction by the U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c) and FED.R.CIV.P. 73, and the case has been reassigned to the undersigned for all purposes.  [20], [21]

## Facts and Procedural History

Rochester Eugene Presley is an inmate of the Mississippi Department of Corrections (MDOC) serving three sentences totaling 17 years for two convictions of grand larceny and one of burglary, all from Forrest County.  The MDOC web site shows Presley entered the system on July 11, 2005, and his tentative release date is October 29, 2021.  Presley is currently housed at South Mississippi Correctional Institution (SMCI) where the events giving rise to this litigation occurred, and where all the Defendants are employed.

On July 26, 2016, Presley filed suit against Warden Marshall Turner, Classification Officer Jarita Bivens and Case Manager Misty Csaszar, alleging violation of his constitutional rights as a result of a January 26, 2016 search of his locker box and confiscation of his property,

and an ensuing Rules Violation Report (RVR) and conviction for possession of "unauthorized electrical chargers." Presley claims the items seized are actually a power supply adapter for his Pegasus 9 Digital TV, and a AA battery charger. Under MDOC disciplinary procedure SOP # 18-01-01, "electronic devices or parts" are deemed major contraband under Rule C-7 and unauthorized possession of them is classified a major violation. Attached as an exhibit to Presley's pleadings are MDOC policies indicating violation of Rule C-7 may result in sanctions including custody (classification) review, disciplinary segregation for 20 days per offense, and restriction of privileges not to exceed two months, excluding exercise periods.[1] [2-6, p. 2] Presley was charged with a Rule C-7 violation, as reflected in the copy of the RVR he received the same day the search occurred. The RVR advised Presley a hearing would be held on the charge "within no less than twenty-four (24) hours and no more than (7) working days." [2-1, p. 2] On January 28, 2015, the hearing took place and, based on the evidence, the hearing officer found Presley guilty of the charge and sanctioned him to "restriction of privileges not to exceed two (2) months excluding exercise periods." [2-1, p. 2] Presley complains that although he had no cell phone or cell phone charger, he was confined in close custody in the cell phone unit for six months with no privileges.

The thrust of Presley's complaint is that MDOC officers mistakenly identified his property as prohibited "electronic devices" rather than the television power adaptor and AA battery charger they actually were. Presley alleges Turner's failure to adequately investigate his

---

[1]The copy of the Rule attached to Plaintiff's complaint also states offenders charged with possession of electronic devices or parts will be removed from trusty time for 6 months if they are receiving 30/30 trusty time, will lose 180 days of trusty time if in 10/30 trusty status, and will lose all earned time up to 180 days if not in trusty status. [2-9, p. 2] This part of the Rule does not apply here because Presley was not in trusty status and did not receive earned time. [2-1, p. 2]

grievance resulted in his remaining in the cellular telephone housing unit;[2] that Bivens acted

arbitrarily in placing him in cellular telephone management housing when his RVR punishment

did not require same; and that Csaszar did nothing to correct the situation when he pointed out

that his RVR was for having a phone charger and she reviewed him for re-classification for a cell

phone C-7 RVR.  Since the RVR says nothing about a *phone* charger, it appears Presley himself

was the source of any mistake Csaszar made as to the nature of his RVR.  [2-1, p. 2]  In a letter to

"classification director Mrs. Denmark" dated April 6, 2015, Presley asked why he was in the

cellular phone building.  The letter bears a notation at the top that,

> Ms. Csaszar completed a admin[istrative] review on you on 2/2/15 for
> reclass[ification] for a cell phone C7 RVR putting you in close custody, it was
> approved on 2/10/15 by Ms. Bivens.  So you will have to do your 6 mo[nths]
> unless you have filed a ARP & win it.

[2-10, p. 2]  This document also bears a notation which appears to state the RVR involved

possession of  "(Cell phone cord and parts)."  [2-10, p. 2]  Presley testified at the *Spears*/omnibus

hearing that he was changed from medium to close custody on February 10, 2015, that close

custody is the cellular phone unit, and that he was placed in the cell phone housing unit on

February 10, 2015 – the date Ms. Bivens approved his reclassification according to the above

exhibit he presented.  [2-10]  His punishment on the RVR conviction did not begin until

February 12, 2015.  [2-1, p. 2]  Thus, his own exhibits indicate his placement in the cell phone

housing unit resulted from his custody reclassification.

Warden Turner provided the first step response to Presley's grievance (appeal) regarding

his conviction of the RVR, in which Presley urged that "one of [the confiscated items] is NOT ...

---

[2]Presley attached to his complaint pages of MDOC Policy 22-01, which state the Cellular
Telephone Management Housing Unit (CTMHU) is "a close custody unit designed to restrict all
privileges of offenders who have possessed cellular telephones, components or accessories." [2-7, p. 2]

a (*sic*) electrical chargers (*sic*)," but a television adapter, without which Presley could not operate

his TV; and one of them is "a (*sic*) electrical battery charger." Turner denied the appeal, finding

policy and procedures were followed in the hearing. [2-2, p. 4], [2-3, p. 2]

Defendants contend they are entitled to summary judgment because Presley's being

placed in the cell phone housing unit, loss of privileges, and reduction in custody status do not

equate to constitutional violations by any of the Defendants; because adequate state court

remedies exist for any claim of taking or deprivation of property; and because Presley was

afforded due process in the prison disciplinary proceedings. [25]

### Summary Judgment Standard

Rule 56, FED.R.CIV.P., requires that a motion for summary judgment be granted "if the

movant shows there is no genuine dispute as to any material fact and that the movant is entitled

to a judgment as a matter of law." A material fact is one that might affect the outcome of the suit

under the governing law; a genuine dispute exists when the evidence is such that a reasonable

jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). On a motion for summary judgment, the Court views the evidence and draws

reasonable inferences most favorable to the non-moving party. *Abarca v. Metropolitan Transit*

*Authority*, 404 F.3d 938, 940 (5th Cir. 2005). The party who bears the burden of proof at trial

also bears the burden of proof at the summary judgment stage. *Celotex Corp. v. Catrett*, 477

U.S. 317, 322-323 (1986).

One seeking summary judgment must identify those portions of the pleadings and

discovery on file and any affidavits which he believes demonstrate the absence of a genuine issue

of material fact. *Id.*, at 325. Once the movant carries his burden, the burden shifts to the non-

movant to show summary judgment should not be granted. The non-movant may not rest upon

mere allegations or denials, but must set forth specific facts showing there is a genuine issue for trial by either submitting opposing evidentiary documents or referring to evidentiary documents already in the record which show the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324-325; *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (non-movant "must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response."). Conclusory allegations, unsubstantiated assertions or the presence of a scintilla of evidence, will not suffice to create a real controversy regarding material facts. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990); *Hopper v. Frank*, 16 F.3d 92, 97-98 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

## Discussion

The first inquiry in a § 1983 civil rights action is whether the complainant has been deprived of a federally protected right. There can be no relief under 42 U.S.C. § 1983 if there has been no deprivation of a federally protected civil right. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). Presley claims he was denied due process in having his custody classification changed, and being assigned to the cell phone housing unit. However, an inmate has no constitutionally protected property or liberty interest in his custodial classification or his housing assignment. *Neals v. Norwood,* 59 F.3d 530, 533 (5th Cir. 1995) (inmate does not have a protectable liberty or property interest in custodial classification); *Nash v. Wilkinson*, 124 F. App'x 254, 255 (5th Cir. 2005) (inmate had no liberty interest in his housing assignment and cannot complain about lack of procedural due process in connection with the loss of those privileges) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Meachum v. Fano,* 427 U.S. 215, 225 (1976); *Berry v. Brady,* 192 F.3d 504, 508 (5th Cir.1999); *Jackson v. Cain,* 864 F.2d 1235, 1250 (5th Cir.1989)).

"Liberty interests protected by the Due Process Clause 'will be generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *King v. Sims*, 2009 WL 2497154, at *5 (S.D. Miss. 2009). "The classification of Plaintiff in a certain level of custody and the loss of prison privileges are not an 'atypical and significant hardship' of prison life." *Williams v. Geo Group, Inc.*, 2008 WL 2724889, at *1 (S.D. Miss. July 10, 2008). The "Due Process Clause does not protect against every change in the conditions of confinement which has a substantial adverse effect upon a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997)(citations omitted). Since Presley has no constitutionally protected right to a certain custody level or housing assignment, his claims against Bivens and Csaszar fail.

Presley's claim that Warden Turner denied his grievance following his conviction of the RVR provides no basis for a civil rights lawsuit against Turner.

> ... inmates do not have a basis for a lawsuit because they are dissatisfied with the grievance procedures. The Plaintiff does not have a basis for a civil rights lawsuit against [a defendant] just because he denied the Plaintiff's Step 2 grievance.

*Marquez v. Quarterman*, 652 F. Supp. 2d 785, 790 (E.D. Tex. 2009).

Insofar as Presley claims Defendants violated MDOC policy and procedure in establishing his current custody level, he is not entitled to relief under § 1983. Such allegations, without more, simply do not rise to a level of constitutional deprivation. *See Guiden v. Wilson,* 344 F. APP'X 980, 981 (5th Cir. 2009) ("A violation of a prison rule by itself is insufficient to set forth a claim of a constitutional violation.") (citing *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir 1986)).

Presley's own exhibits defeat his contention that he was denied due process in the disciplinary proceedings. For example, he claims he did not receive 24 hours notice before the

hearing, however Exhibit 1 plainly shows he received and signed for a copy of the RVR at 3:00 on the afternoon of January 26, 2015; that the RVR advised him a hearing would be held within "no less than twenty-four (24) hours and no more than (7) working days;" and that his hearing was, in fact, held on January 28, 2015. [2-1] His complaints about being reclassified and placed in the cell phone unit have already been addressed.

To the extent that Presley attempts to claim an unconstitutional deprivation of property, it is well settled that neither negligent nor intentional deprivation of prisoners' property by state officials violates the Due Process Clause of the Fourteenth Amendment so long as there exist adequate state post-deprivation remedies for the loss. *Hudson v. Palmer,* 468 U.S. 517, 533 (1984). Under the *Parratt/Hudson* doctrine[3], a state actor's unauthorized deprivation of a plaintiff's property does not result in a violation of due process if the state provides an adequate post-deprivation remedy. *Myers v. Klevenhagen,* 97 F.3d 91, 94 (5th Cir. 1996); *see also Marshall v. Norwood*, 741 F.2d 761, 763-764 (5th Cir. 1984). Mississippi provides post-deprivation remedies which satisfy due process. *Nickens v. Melton,* 38 F.3d 183, 185 (5th Cir. 1994). Furthermore, to the extent that Presley seeks return of, or challenges prison officials' confiscation of "electronic devices or parts," this Court cannot grant relief, as to do so would imply his conviction of the RVR was invalid. A state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated. *Heck v. Humphrey,* 512 U.S. 477, 486-487 (1994). The *Heck* doctrine has been held to apply to a claim brought pursuant to 42 U.S.C. § 1983 by a state prisoner for damages and declaratory relief which challenges the validity of

---

[3]*Parratt v. Taylor*, 451 U.S. 527, 544 (1981).

prison disciplinary actions.  *Edwards v. Balisok,* 520 U.S. 641 (1997); *Williams v. Geo Grp., Inc.*, 2008 WL 2724889, at *2.  It is therefore,

**ORDERED AND ADJUDGED**, that Defendants' motion for summary judgment is granted.  A separate judgment will be entered.

**SO ORDERED**, this the 5th day of September, 2017.

/s/ *Robert H. Walker*

ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE